

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

February 28, 1961

Honorable Robert S. Calvert
Comptroller of Public Accounts
Capitol Station
Austin, Texas

Opinion No. WW-1003

Re: Reconsideration of
Opinion No. WW-922 per-
taining to taxability
for inheritance tax pur-
poses of bequest to the
United States to be used
for the retirement of the
National Debt in view of
new proposal with regard

Dear Mr. Calvert:

to use of said bequest.

In Opinion No. WW-922 this office considered the taxabil-
ity for inheritance tax purposes of a bequest in trust to the
United States Government to be used for the retirement of the
National Debt. The specific bequest reads as follows:

"I direct that any income from the
Susan Vaughan Clayton Trust No. 2 . . .
be paid for the period provided in the
instrument creating said Trust, as
follows:

"(a) One-half (1/2) of such income
to my beloved country, the United States
of America, to be used for the retire-
ment of the National Debt. . . ."

This bequest was subject to inheritance tax unless exempt
by the following provision of Article 14.06-Class E, ch. 14,
Title 122-A, Tax.-Gen., V.C.S.:

"Provided, however, that this Article
shall not apply on property passing to
or for the use of the United States, or
to or for the use of any religious, educa-
tional or charitable organization, incorpo-
rated, unincorporated or in the form of a
trust, when such bequest, devise or gift
is to be used within this State. The exemp-
tion from tax under the preceding provisions
of this Article shall, without limiting its
application under other appropriate cir-
cumstances, apply to all or so much of any

bequest, devise or gift to or for the
use of the United States, or a religious,
educational or charitable organization,
which is, in writing and prior to the
payment of the tax, irrevocably committed
for use exclusively within the State of
Texas or transferred to a religious,
educational or charitable organization
for use exclusively within this State."

In an effort to obtain exemption, the following proposal
was submitted in a letter from William B. Butler, United States
Attorney for the Southern District of Texas, by Norman W. Black,
Assistant, dated July 13, 1960, addressed to Honorable Robert S.
Calvert, State Comptroller of Public Accounts.

"I have informed the Department of
Justice (and they have informed the Secre-
tary of the Treasury) that Article 14.06
offers a possibility whereby the United
States could legally avoid the payment
of State Inheritance Taxes on this Trust
(the tax is estimated at approximately
$400,000.00). The Secretary of the
Treasury has suggested the following
arrangement, whereby the income from the
bequest by the late Mrs. Clayton could
be used exclusively within the State of
Texas for the retirement of the National
Debt. That proposed arrangement is as
follows:

"'The Treasury would make special
arrangements to receive within the State
of Texas moneys representing income de-
rived from the Susan V. Clayton Trust No.
2 and would maintain them in a separate
account in the name of the Treasurer of
the United States in the State of Texas
and not intermingle them with any other
funds of the United States. Such moneys
would be used solely to redeem public
debt obligations presented to the Treasury
for redemption in the State of Texas.

"'Specifically, the moneys would be
paid to the United States at the Federal
Reserve Bank of Dallas, Texas, for credit
to the Treasurer of the United States.
The Treasurer would maintain a special
deposit account with the Federal Reserve

Bank for these particular moneys. This
account would be separate from the account
now maintained by the Treasurer with the
Federal Reserve Bank of Dallas for General
operating purposes. The moneys thus
received in Texas and held on deposit with
the Federal Reserve Bank of Dallas would be
identified specially on the books of the
Treasury to be available for retirement of
the national debt. From time to time, as
public debt obligations are presented to
the Federal Reserve Bank of Dallas for
redemption by that Bank as fiscal agent
of the United States, the Treasury would
direct the bank to redeem such obligations
from the moneys held on deposit in the special
account representing the income from the
bequest.'"

Opinion No. WW-922 reviewed the controlling court decisions
and reached the following conclusion:

"We think that the foregoing decisions
demonstrate that the 'use' contemplated
by the statute is a direct, actual use
within the State for the benefit of and
limited to its citizens. We do not think
that this requisite use can be satisfied
by the mere retention in the State of
funds devised for the retirement of the
national debt. Any benefit which the
residents of this State would receive
under the proposed arrangement would be
at best an incidental benefit shared
equally with all of the residents of all
other forty-nine states."

In view of this conclusion exemption was denied.

The United States, through its appropriate officials, has
submitted another plan which it is urged would satisfy the
requisite use within the State of Texas and result in exempting
the bequest from any inheritance tax. We set out the plan, as
submitted, below:

"The Treasury would make special arrange-
ments to receive within the State of Texas
moneys representing income derived from the
Susan V. Clayton Trust No. 2 and would main-
tain them in a separate account in the name

of the Treasurer of the United States
in the State of Texas and not intermingle
them with any other funds of the United
States.  Such moneys would be used solely
to redeem public debt obligations owned
by residents of the State of Texas pre-
sented to the Treasury for redemption in
the State of Texas.

"Specifically, the moneys would be paid
to the United States at the Federal Reserve
Bank of Dallas, Texas, for credit to the
Treasurer of the United States.  The Treasurer
would maintain a special deposit account with
the Federal Reserve Bank for these particular
moneys.  This account would be separate from
the account now maintained by the Treasurer
with the Federal Reserve Bank of Dallas for
general operating purposes.  The moneys thus
received in Texas and held on deposit with
the Federal Reserve Bank of Dallas would be
identified specially on the books of the
Treasury to be available for retirement of
the national debt.  From time to time, as
public debt obligations owned by residents
of the State of Texas are presented to the
Federal Reserve Bank of Dallas for redemption
by that bank as fiscal agent of the United
States, the Treasury would direct the bank
to redeem such obligations from the moneys
held on deposit in the special account repre-
senting the income from the bequest."

It is evident that the only difference between the pro-
posal first submitted and the last proposal is that in using
the trust income for the retirement of the National Debt, such
use would be limited to the discharge of such public debt
obligations as are owned by residents of this State.

Although the Government's position in connection with this
new proposal is appealing on its face, we do not think it will
bear analysis.  True, only residents of Texas will have obliga-
tions of the United States Government satisifed from the bequest,
but are we to assume that an obligation owned by a Texas re-
sident is, for this reason, any less an obligation of the Govern-
ment of the United States or that the Government's liability
is limited to this bequest or must be satisfied therefrom?
Wherein lies any benefit to Texas residents in the satisfaction
of these obligations from this special fund rather than from
any Government revenues?  Were we to assume that the Govern-

ment will default in whole or in part in the discharge of its obligations, Texas residents, as a result of the contemplated commitment, would have no added security for their loans. The proposed commitment could not so change the Government's existing contractual liability to all its creditors nor effectuate any priority for Texas creditors.

Finally, who will ultimately benefit from the retirement of part or all of the National Debt of the United States? Not just the creditors who are repaid the loans that they have made to the United States. Rather, all of the citizens of the United States will benefit in the resulting diminution of the tax burden which they must bear.

We must, therefore, again conclude that any benefit which the residents of this State would receive under this last proposed arrangement would be, at best, an incidental benefit shared equally with all of the residents of all the other forty-nine states. The requisite "use within this State" would not be satisfied, and exemption must be denied.

## S U M M A R Y

A bequest in trust to the United States to be used for the retirement of the National Debt may not obtain exemption from inheritance taxes by a commitment that the bequest will be used to redeem only public debt obligations owned by Texas residents.

Yours very truly,

WILL WILSON
Attorney General of Texas

MMP:cm

APPROVED:

By Marietta McGregor Payne
Marietta McGregor Payne
Assistant

OPINION COMMITTEE:
W. V. Geppert, Chairman

William T. Blackburn
Leon Pesek
John C. Steinberger

REVIEWED FOR THE ATTORNEY GENERAL
By: Morgan Nesbitt